## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                              **No. CR 21-0890 RB**

**ANDRES GERARDO AYALA-
BOJORQUEZ,**

      **Defendant.**

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on several pretrial motions and notices. First, the United States moves to exclude evidence of Ayala-Bojorquez's state of mind or mistaken beliefs. (Doc. 27.) Ayala-Bojorquez takes no position on this motion. (*See id.* at 4.) The United States filed three notices that: (1) "it intends to introduce evidence of [Ayala-Bojorquez's] April 2016 removal from the United States and 2016 conviction for Illegal Reentry" (Doc. 28 at 1); (2) if Ayala-Bojorquez testifies at trial, it may seek to impeach him with evidence of his prior felony convictions (Doc. 33); and (3) it intends to offer expert testimony from Edward John Sanchez regarding fingerprint identification and analysis (Doc. 38). Ayala-Bojorquez objects to the introduction of evidence regarding the 2016 removal and conviction. (*See* Doc. 36.) He also moves to exclude Sanchez's expert testimony. (Doc. 43.)

Having considered the parties' arguments and the relevant law, the Court will grant the Government's motion in limine and reserve ruling on whether the Government may impeach Ayala-Bojorquez with evidence of prior felony convictions or offer evidence of the 2016 removal and conviction and any fingerprint identification related to that removal and conviction. The Court will deny Ayala-Bojorquez's motion to exclude Sanchez.

I.      **Relevant Factual Background**

On March 18, 2021, United States Border Patrol agents encountered Ayala-Bojorquez in Hidalgo County, New Mexico. (Doc. 1.) Ayala-Bojorquez admitted "that he was a citizen of Mexico illegally present in the United States" and "did not cross through a lawful Port of Entry . . . ." (*Id.*) Because he has a 2006 conviction for possession with intent to distribute marijuana, the Government charged Ayala-Bojorquez with one count of Reentry After Deportation by an Aggravated Felon, in violation of 8 U.S.C. § 1326(a)(1) & (b)(2). (*See id.*; *see also* Doc. 33 at 2.)

Years earlier, on December 10, 1998, an immigration judge ordered Ayala-Bojorquez to be removed from the United States. (*See* Doc. 28 at 2.) He was removed again on April 25, 2016. (*See id.*) On May 6, 2016, he was found in the United States yet again and charged with illegal reentry. (*See id.*) He pled guilty and was sentenced to 24 months in prison. (*Id.*) Ayala-Bojorquez was removed to Mexico on August 30, 2019. (*Id.* at 2.) The Government seeks to introduce information at trial about the 2016 removal and conviction. (*See id.*)

II.     **Discussion**

To convict Ayala-Bojorquez of reentry after deportation, the United States must establish that: (1) he was not a United States citizen at the time alleged in the indictment; (2) he had previously been excluded, deported, or removed from the United States; (3) he knowingly entered or attempted to enter or was found in the United States having entered knowingly; and (4) he did not have authority to be in the United States. *See* 8 U.S.C. § 1326(a)(1); 10th Circuit Pattern Jury Instruction 2.05 (2021).

A.      **The Court grants the Government's motion in limine.**

The United States asks the Court to preclude Ayala-Bojorquez from mentioning or introducing evidence to show that he (1) "was not aware that he entered the United States

2

illegally"; (2) "was under the mistaken belief that he was authorized to enter the United States"; (3) "was not aware of his prior deportation when he entered the United States"; or (4) "returned for a specific reason." (Doc. 27 at 1.) The Government explains that evidence of Ayala-Bojorquez's "state of mind or mistaken beliefs is not admissible . . . because it is not relevant to [his] guilt or innocence. (*Id.* at 2.) Ayala-Bojorquez takes no position on the motion. (*Id.* at 4.)

Tenth Circuit precedent confirms that "the *mens rea* required to secure a Section 1326 conviction for being unlawfully 'found in' the United States is limited." *United States v. Hernandez-Hernandez*, 519 F.3d 1236, 1239 (10th Cir. 2008). The Government need only show "that the defendant's *acts* were intentional. No intent to break the law—whether characterized as 'specific intent' or 'general criminal intent'—must be proved." *Id.* (quoting *United States v. Miranda-Enriquez*, 842 F.2d 1211, 1212 (10th Cir. 1988)). Thus, the evidence mentioned in the Government's motion—Ayala-Bojorquez's knowledge that he was in the United States, had been deported before, was authorized to be here, or his reason for being here—is irrelevant. The Court will grant the motion.

**B.      The Court reserves ruling on whether the United States may introduce evidence of the 2016 conviction and removal or any associated fingerprint impressions.**

The United States seeks to introduce evidence regarding Ayala-Bojorquez's 2016 removal from the United States and subsequent conviction for illegal reentry. (Doc. 28 at 1; *see also* Doc. 38.) Ayala-Bojorquez objects on the basis that "the Government has failed to articulate a proper purpose for the proffered evidence under Federal Rule of Evidence 404(b)." (Doc. 36 at 4.) He asserts that the Government may use the August 30, 2019 removal to establish that he was previously removed or deported from the United States, making the 2016 removal and conviction irrelevant. (*Id.* at 5.) He also contends that the evidence is irrelevant under Rule 403 and even if it

was relevant, "the potential for unfairness and prejudice . . . would substantially outweigh any probative value of such evidence . . . ." (Doc. 43 at 4–6.)

Rule 404(a) prohibits the admission of evidence of a person's "bad character" to prove that the person acted in accordance with that character on a particular occasion. *See* Fed. R. Evid. 404(a)(1). Rule 404(b) prohibits the introduction of "prior bad acts"—that is, evidence of a "crime, wrong, or act"—to prove that the defendant has a general propensity to act in such a manner. *See* Fed. R. Evid. 404(b)(1); *see also United States v. Shirley*, 214 F. Supp. 3d 1124, 1144 (D.N.M. 2016). The rule provides a nonexhaustive list of exceptions, however, which allows courts to admit "'other wrongs' evidence to be used for valid purposes 'such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *See United States v. Lujan*, No. CR 05-0924 RB, 2011 WL 13210276, at *5, *6 (D.N.M. May 11, 2011) (quoting Fed. R. Evid. 404(b)(2)).

> Rule 404(b) requires a familiar four part test:
> (1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

*United States v. Diaz*, 679 F.3d 1183, 1190 (10th Cir. 2012) (quoting *United States v. Morris*, 287 F.3d 985, 990 (10th Cir. 2002)).

### 1.   Evidence of the 2016 removal and conviction must be introduced for a proper purpose.

Ayala-Bojorquez argues that the Government has not adequately shown that the evidence will be offered for a proper purpose. (Doc. 36 at 3–4.) The Government may not make "a broad statement merely invoking or restating Rule 404(b)" but instead must specifically articulate "the relevant purpose and specific inferences to be drawn from each proffer of evidence of other acts

. . . ." *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985). The United States asserts that it will offer the 2016 removal and conviction "to show that [Ayala-Bojorquez's] entry into the United States was intentional and committed not as a mistake or accident." (Doc. 28 at 3.) As knowing entry is "a required element in a reentry prosecution[,]" the Government contends that evidence of the 2016 removal and conviction is appropriate. (*See id.* at 4 (citation omitted).)

The United States relies on *United States v. Eufracio-Torres*, where the defendant (Torres) was convicted "of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B)." 890 F.2d 266, 267 (10th Cir. 1989). Prior to Torres's trial, he sought "to prohibit the government from using two 1982 convictions for illegal entry into the United States in violation of 8 U.S.C. § 1325." *Id.* at 268. "[T]he court allowed the government to use the convictions and instructed the jury the evidence was admitted for the limited purpose to show Torres had knowledge that his passengers were illegal aliens at the time he transported them." *Id.* The "court reasoned the evidence was admissible because Torres was charged with specific intent crimes[;]" *i.e.*, "the government had to prove that he acted with knowledge or reckless disregard of the fact that the aliens he transported were in this country illegally," and thus his 1982 "convictions for illegal entry were probative as to his knowledge of the aliens' illegal presence." *Id.* at 272.

*Eufracio-Torres* is not on point, though, as the only intent the United States must establish here is that Ayala-Bojorquez intended to enter the country. *See, e.g.*, *Hernandez-Hernandez*, 519 F.3d at 1239 (affirming that a showing of "the intent to do the act of entering the country" suffices "to support a conviction under" § 1326(a)) (citations omitted). The Tenth Circuit has confirmed "that an alien's presence in the United States gives rise to a natural, common sense inference that his or her presence was intentional in the very limited, Section 1326 sense." *Id.* at 1241. "After all, those crossing the border usually do so intending their own physical actions." *Id.* (citations

omitted). Should Ayala-Bojorquez argue that he did not intend to enter the United States, the Government may argue that the 2016 removal and conviction shows absence of mistake under Rule 404(b). Otherwise, the United States has not yet established that the 2016 removal and conviction will be offered for a proper purpose.

### 2.    Evidence of the 2016 removal and conviction must be relevant.

Similarly, Ayala-Bojorquez argues that evidence of the 2016 removal and conviction is not relevant. (Doc. 36 at 5.) The Government acknowledges that it may use the August 30, 2019 removal to satisfy the second element—that Ayala-Bojorquez had been previously removed from the United States—under § 1326(a). (*See* Doc. 28 at 2 n.1.) Consequently, evidence concerning the 2016 removal is duplicative, and the Government has not yet shown that it is relevant.

Under these circumstances, the Court will reserve ruling on whether the United States may offer evidence of Ayala-Bojorquez's 2016 removal and conviction at trial. Should the United States show that the evidence is relevant and introduced for a proper purpose, the Court will determine whether its probative value is substantially outweighed by its potential for unfair prejudice and will, upon request, give the jury an appropriate limiting instruction. *See Diaz*, 679 F.3d at 1190.

### C.    The Court denies Ayala-Bojorquez's motion to exclude Sanchez's testimony.

Finally, Ayala-Bojorquez moves to exclude Sanchez's expert testimony on the basis that the Government failed to comply with Federal Rule of Criminal Procedure 16. (*See* Doc. 43.) Pursuant to the Court's Discovery Order (Doc. 15) and Rule 16, the Government was required to provide "a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial[,]" to include the expert's qualifications, a description of his opinions, and "the bases and reasons for those opinions

. . . ." Fed. R. Crim. P. 16(a)(1)(G). Ayala-Bojorquez contends that the Government's notice is insufficient because it "does not inform the defense of what the basis of [the] expert's opinion will be, or how he arrived at that opinion." (Doc 43 at 4.) The Government's notice provides that it

> intends to call Edward John Sanchez as an expert to testify about the methods and practices of fingerprint identification and analysis. The United States anticipates that Mr. Sanchez will testify in this case regarding his comparisons of any fingerprint impressions of the defendant, Andres Gerardo Ayala-Bojorquez, taken after his arrest in this case on or about March 18, 2021, with inked fingerprints obtained from an individual who was deported on or about August 30, 2019, on or about April 26, 2016, and on or about December 10, 1998. The United States anticipates that Mr. Sanchez will testify that based on these comparisons, he has identified the inked fingerprints obtained on [these dates] as the defendant's fingerprints.

(Doc. 38 at 1.) The Government attached Sanchez's CV to the notice. (*See* Doc. 38-1.)

Ayala-Bojorquez asserts that the notice fails to disclose the basis of Sanchez's opinion "or how he arrived at that opinion." (Doc. 43 at 4.) He compares the circumstances here to three cases. First, in *United States v. De La Cruz*, the government gave notice that its expert, who examined and analyzed a controlled substance, would testify about the substance's weight. No. 3:17-CR-00201, 2019 WL 1757528, at *4 (M.D. Pa. Apr. 19, 2019). The court found the notice insufficient, as it failed to identify the expert, the expert's qualifications or opinions, or the bases or reasons for the opinions. *See id.* The notice in this case provided much more information than in *De La Cruz*.

Ayala-Bojorquez next cites *United States v. Vaghari*, in which the government provided the defendant with its proposed expert's resume and stated that the expert would testify "on efforts to evade U.S. trade sanctions governing trade with Iran[;] . . . that the United Arab Emirates is a location through which technology is often trans-shipped from the West to Iran[;] . . . [information about] smuggling activity[;] . . . [and] observations about the nature of, and facts related to, Iran's government, infrastructure, universities, and industry." 735 F. Supp. 2d 197, 200 (E.D. Penn. 2010) (quotation marks omitted). After the defendant moved to exclude the expert

testimony, the government provided an "expanded" expert disclosure. *See id.* The court agreed that the first notice was insufficient but found that the second notice was adequate under Rule 16. *See id.* at 200–201. Here, on November 17, 2021, the Government provided an expanded notice that includes Sanchez's fingerprint analysis report and the documents he reviewed, which together with his CV, are sufficient under Rule 16. (*See* Docs. 44-A; 44-B.) Last, Ayala-Bojorquez cites *United States v. Lopez*, where the Court "assum[ed] without deciding[] that 'by not providing the expert witness's resume to the defense until trial, and only providing the defense with a brief summary of the expert report, the government violated the requirements of Rule 16(a).'" (Doc. 43 at 4 (quoting *Lopez*, 271 F.3d 472, 483 (3d Cir. 2001)).) *Lopez* is not on point, though, as the Government here has provided defense with much more information, and trial is still a week away.

In short, the Court disagrees that the Government has failed to provide an adequate summary of Sanchez's opinion. He will opine that, based on the fingerprint analysis, he believes Ayala-Bojorquez is the same individual who was previously removed. Ayala-Bojorquez has known since November 2, 2021, that the Government intended to call a fingerprint analysis expert. (*See* Doc. 24.) He has had time to secure his own fingerprint expert. Moreover, the Government has since filed an amended notice (Doc. 38) and supplemented the information in its notice (Doc. 44-A).

The Court's decision here is supported by the finding in *United States v. Brown*, where the defendant objected at trial to an expert on the basis that the government's notice failed to disclose the specific methodology to which an expert would testify. 592 F.3d 1088, 1089–90 (10th Cir. 2009). The district court overruled the objection, finding that "the summary told [the defendant] exactly what the fingerprint expert was going to do and also noted the late timing of the objection." *Id.* at 1090 (brackets and quotation marks omitted). The Tenth Circuit found that the court did not

abuse its discretion, as the government's report and summary, which "described [the expert's] analysis and opinion that the fingerprint found at the scene of the crime matched" the defendant's, "substantially complied with Rule 16's requirements." *Id.* at 1091. Because the Government has provided sufficient notice concerning Sanchez's qualifications, opinion, and the basis for his opinion, the Court will deny the motion to exclude Sanchez.

 **THEREFORE,**

 **IT IS ORDERED** that the United States of America's Motion in Limine to Exclude Evidence (Doc. 27) is **GRANTED**;

 **IT IS FURTHER ORDERED** that the Court **RESERVES RULING** on the Notice of Other Crimes or Bad Acts Pursuant to Rule 404(b) (Doc. 28) and Ayala-Bojorquez's objection thereto (Doc. 36; *see also* Doc. 43 at 4–6);

 **IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Expert Testimony (Doc. 43) is **DENIED**—the Court will not exclude Sanchez's testimony.[1]


_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE

---

[1] To the extent Ayala-Bojorquez objects to admission of evidence of the 2016 removal and conviction in his motion (*see* Doc. 43 at 4–6), the Court reserves ruling on that issue as described in this Opinion.